The United States District Court
Northern  District of Texas
Dallas  Division

| | | |
|---|---|---|
| Cassandra Bray | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| ADT LLC | § | |
| | § | |
| | § | |
| Defendants. | § | |

### Plaintiff's Original Complaint

Plaintiff Cassandra Bray ("Bray" or "Plaintiff") files this Original Complaint against ADT LLC and shows:

### Parties

1.      Plaintiff Cassandra Bray is an individual citizen of Texas and a resident of Collin County, Texas.

2.      Defendant ADT LLC ("ADT") is a  foreign limited liability company that may be served by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

### Venue and Jurisdiction

3.      Venue is proper in Dallas County, Texas because the events establishing the claims occurred in Dallas County, which is in the Northern District of Texas.

4.      This Court has federal jurisdiction over the claims asserted under Title VII,

42 U.S.C. § 2000e, 42 U.S.C. § 1981, the Age Discrimination in Employment Act,  29

U.S.C. § 621, and supplemental jurisdiction over Plaintiff's Texas Labor Code Chapter

21 claims.

## Summary of Claim

5.        ADT discriminated against Bray because of her race and age and retaliated

against Bray after she engaged in protected activity.

## Factual Background

6.        ADT hired Bray in May 2006 to work in its Irving office. Bray is an African

American female and is age 52. During Bray's employment, she has received positive

reviews and regular promotions and pay increases.

7.        ADT places its employees in a salary grade that has a minimum, median,

and maximum salary for that grade.

8.        In May 2016, , ADT promoted Bray to the position of Area Manager,

Customer Care and Knowledge Management.

9.        ADT's salary grade for Bray in that job was an E4. Upon receipt of that

promotion,  Bray earned $71,259.67..  Bray received salary increases in the following

years.

10.        ADT gave Bray a merit increase on March 31, 2019 taking her salary to

$79,824.86.

11.     As the Area Manager, Customer Care and Knowledge Management, Bray supervised four employees. One position that reported to Bray was the Senior Instructional Designer role, which is a grade E3 position. It is one level below Bray's E4 grade.

12.     In 2018, ADT wanted to hire a new Senior Instructional Designer who would report to Bray.

13.     After ADT interviewed candidates, it made an offer to a Caucasian female candidate at a salary of $100,000. That salary exceeded ADT's E3 salary grade range.

14.     ADT, through Bray's supervisor Angelina Andrews, notified Bray that ADT was making this offer to the candidate at this salary level and asked Bray if Bray would have a problem with a subordinate earning more than she did.

15.     Bray told Andrews she had been told never to ask a question if you did not want an answer.  Bray then asked Andrews if Andrews really wanted to know the answer to that question. Bray told Andrews she thought the company was bringing in this younger white female candidate to assume Bray's role and wanted Bray to train her. Bray communicated that she was upset by this.

16.     ADT offered the position at $100,000 to this candidate, but the candidate declined ADT's offer.

17.     ADT then hired Barbara Suter, a Caucasian female,  for the Senior Instructional Designer position and paid Suter a base salary of $100,000. Suter worked in the role from October 2018 to January 2019 and reported to Bray.

18.     In March 2019, ADT hired Brian Darnell, a Caucasian male younger than Bray, for the Senior Instructional Designer role and paid him a salary of $100,000. Darnell reported to Bray.

19.     In September  2019, ADT hired Elizabeth (Nancy) Parker, a Caucasian female younger than Bray, for the Senior Instructional Designer role and paid her a salary of $100,000. Parker reported to Bray.

20.     At that time, Suter, Darnell and Parker were subordinates to Bray but all earned much more than Bray's $79,824.86 in pay even though Bray was in a higher pay grade and their manager. These employees were all paid in excess of the E3 grade salary maximum.

21.     Bray, despite her years of experience and excellent performance ratings, was paid *below* the midpoint for a Grade E4 position. At ADT, a Grade E4 position had a minimum salary of $58,800, a midpoint of $84,000 and a maximum of $117,600.

22.     Bray believes she was discriminated against because of her race and  age by being paid less than her younger Caucasian subordinates and the one male subordinate who reported to her. Upon information and belief, Bray was paid less than other similarly

situated E4 employees with comparable tenure and experience who were not African American.

23.     In February 2020, ADT told Bray that her Area Manager position was being eliminated. ADT told Bray it was combining the Content and Curriculum programs into one wheelhouse. Because it had extra positions, it needed to eliminate positions.

24.     ADT told Bray she had a choice of taking a severance package or taking a demotion to a Senior Instructional Designer position at a salary of $94,093.55.

25.     Bray complained to Hethr England at ADT that the salary offered to her was discriminatory because it was less than the salary paid to the other employees who had worked as Senior Instructional Designers and who had reported to her. Those individuals had been paid a base salary of $100,000 for the role.

26.     ADT, through Hethr England, the Senior Director, Strategic Initiatives and Planning, originally defended the salary offer of $94,093.55 to Bray for the Senior Instructional Designer position. England told Bray the offer was fair because Bray was getting a 3% performance increase and a 15% increase in her salary.

27.     Bray told ADT, through England, that Bray would still be paid less than what her younger Caucasian subordinates had been paid for performing the same job duties.

28.     ADT eventually agreed to pay Bray $100,000 for the Senior Instructional Designer role. Bray then accepted the position.

29.     ADT, as part of the restructuring, created a Senior Manager, Customer Experience and Learning position. That position would have been a promotion for Bray. Though Bray was amply qualified for the position and had the experience to perform the Senior Manager position, ADT did not allow Bray to apply for or be considered for the Senior Manager position.

30.     Instead, ADT, through a "tap on the shoulder promotion," put Jana Perry, a Caucasian female younger than Bray, in the job. Perry had been one of Bray's former younger subordinates.

31.     Instead of promoting Bray, ADT demoted Bray to the grade E3 Senior Instructional Designer role.  Though Bray's salary increased, this was still a demotion in ADT's organizational structure.

32.     Bray later learned that ADT did not change her classification as an E4 employee in its records when it placed her in the E3 Senior Instructional Designer role. Though Bray remained an E4 employee, Bray's Caucasian male peer was designated as an E3.B  employee and paid the same base salary as Bray.

33.     In its February 2020 restructure, before ADT demoted Bray, it moved several other employees into new roles for which Bray was qualified, but not considered by ADT. For example, Bray's younger Caucasian peer, June Brickwood, the Area Manager Service Excellence and Training was moved laterally into an Area Manager Customer Care Experience and Quality role. Bray was not considered for another Area Manager role

even though ADT had an Area Manager Customer Experience Quality Manager position open at the time of the restructure.

34.    ADT also had an open Manager, Customer Care Enterprise Initiative position that Bray was qualified for. Bray was not considered for that position.

35.    ADT did not always post open positions that Bray could have applied for. Instead, ADT would often use a "tap on the shoulder" promotion to move employees internally into new positions without the positions being posted and employees such as Bray being given the opportunity to apply for the positions.

36.    Because Bray believed that she was being subjected to disparate terms and conditions in her employment and pay by ADT, Bray filed EEOC Charge of Discrimination No. 450-2020-03645 with the EEOC on May 11, 2020. It was automatically dual-filed with the Texas Workforce Commission.

37.    After filing her Charge, Bray continued to apply for positions within ADT. Bray received interviews for some positions but was never hired for the open positions for which she applied.

38.    In March 2021, Bray received her annual review and received a Highly Effective rating. Because ADT still designated Bray as an E4 employee in its records, Bray should have been eligible to receive a merit increase of 3-5% of her base salary and a bonus payment of 20% of her salary. Bray did not receive this.

39.     Instead, Bray received a one-time lump sum payment of $3,000 as if she were an E3.B employee instead of an E4 employee. Bray also received a bonus of 15% of her salary as if she were an E3 employee.  Bray did not receive the 20% of her salary she should have received as an E4 employee. ADT subjected Bray to differing terms and conditions in her pay than that of other E4 employees.

40.     On August 10, 2021, ADT notified Bray her employment would be eliminated.  Bray was told if she did not find a new position within ADT by October 1, 2020, Bray would be eligible for a severance package.

41.     Bray then applied for several positions for which she was qualified within ADT. Bray received interviews for some positions for which she applied and did not receive interviews for other positions for which she applied.

42.     ADT did not hire Bray for any of the open positions for which Bray applied.

43.     Though some ADT employees offered Bray assistance in finding a new position, Bray believes she received less assistance than her Caucasian male peer from her former Senior Director, Hethr England, in searching for a new position. England fully knew of Bray's May 2020 Charge of Discrimination.

44.     ADT offered Bray a severance package that would have paid Bray 15 weeks of salary as severance. That offer was one week for each year of Bray's service to ADT. However, as an E4 level employee, according to ADT's chart outlining the minimum severance Bray should have received, Bray should have been offered at least 1.5 weeks

per year of service. At the E4 level, Band 5, Bray should have been offered 22 weeks of severance according to ADT documents.

45.      ADT did not offer Bray the severance that would have corresponded with the E4 level, Band 5.

46.      ADT subjected Bray to disparate treatment in the terms and conditions of her employment and its severance offer to her upon the termination of her employment.

47.      Bray filed a second Charge of Discrimination with the EEOC asserting race, age, and sex discrimination and retaliation on November 19, 2021 addressing her termination and continued retaliation to which she was subjected following filing her first Charge. That second Charge has been assigned Charge No. 450-2022-01044 and is currently pending with the EEOC.

48.      Bray received her notice of right to sue on her first Charge No. 450-2020-03645 on October 27, 2021 and timely sues.

## Causes of Action

### Race Discrimination under Title VII and Texas Labor Code Chapter 21

49.      Bray incorporates the preceding paragraphs as if restated.

50.      ADT is an "employer" as defined by 42 U.S.C. § 2000e(b) and Tex. Labor Code § 21.002(8).

51.      Bray is an employee as defined by 42 U.S.C. § 2000e(f) and Tex. Labor Code § 21.002(7).

52.     Bray was qualified to perform the job duties at ADT.

53.     ADT subjected Bray to disparate terms and conditions of employment as compared to her non-African American peers while Bray worked for ADT.

54.     ADT paid Bray less than her Caucasian subordinate employees.

55.     ADT refused to consider Bray for the "tap on the shoulder" promotions given to Caucasian peers or subordinates for positions for which Bray was well qualified and had the necessary experience.

56.     Upon information and belief, ADT paid Bray less than her Caucasian E4 peers at the same level and with the same level of experience as Bray. Bray was originally paid less than the midpoint of her E4 pay band despite years of experience with ADT and excellent performance reviews.

57.     ADT terminated Bray following a restructure in which Bray's position was eliminated.  ADT did not hire Bray for any of the open positions for which she applied despite her experience and qualifications.[1] Upon information and belief, the persons hired for those positions were not African American.

58.     ADT did not provide Bray with the same level of assistance in finding a new position as it did to her Caucasian peers.

---

[1] Bray's EEOC charge related to her termination and additional retaliation that occurred after she filed her first EEOC charge is still pending.

59.　　　ADT did not offer Bray severance commensurate with her E4 salary grade and level according to ADT documents.

60.　　　ADT subjected Bray to differing terms and conditions in her employment because of her race as compared to her Caucasian peers and subordinates.

61.　　　ADT discriminated against Bray because of her race in violation of Title VII and Texas Labor Code Chapter 21.

62.　　　ADT's discriminatory actions towards Bray were taken with malice and/or a reckless disregard for Bray's rights.

63.　　　ADT's violations of Title VII and Texas Labor Code Chapter 21 damaged Bray. ADT caused Bray to lose her income and benefits when it fired her in violation of Title VII and Texas Labor Code Chapter 21.

64.　　　Bray seeks to recover the damages to which she is entitled for ADT's violation of Title VII and Texas Labor Code Chapter 21, including the equitable remedy of reinstatement, recovery of her back pay, front pay, fringe benefits, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs.

### 42 U.S.C. § 1981 Race Discrimination Claims

65.　　　Bray incorporates the preceding paragraphs as if restated.

66.　　　ADT discriminated against Bray because of her race. Bray is an African American female.

67.      ADT discriminated against Bray because of her race in the terms and conditions of her employment by paying her less than her Caucasian peers or subordinates during the four years preceding filing this lawsuit.

68.      ADT discriminated against Bray because of her race by not promoting Bray into the open positions for which Bray was qualified. ADT instead regularly promoted Caucasian employees and non-African American employees into management positions for which Bray was qualified through using a "tap on the shoulder" technique.

69.      ADT did not post open positions and allow all employees to apply for the positions despite its policies requiring that positions be posted. Instead, ADT simply selected candidates it wanted in certain roles. Despite Bray's abundant qualifications for these roles, ADT never selected Bray for any of those positions. Instead, ADT selected Caucasian or non-African American employees for those position.

70.      ADT discriminated against Bray because of her race by not paying her a fair salary for her work despite her high experience level and excellent results. ADT had been paying Bray less than the midpoint for her E4 role. Upon information and belief, ADT paid Caucasian employees with comparable experience to Bray at a rate higher than the midpoint of the E4 level.

71.      ADT discriminated against Bray by eliminating her role as part of a restructure in August 2021 and not hiring Bray for any of the positions for which Bray applied.

72.     ADT discriminated against Bray because of her race by not offering her the same level of assistance in finding a new role after the August 2021 restructure was announced as it did for her Caucasian peers.

73.     ADT discriminated against Bray because of her race by not offering her the severance commensurate with her E4 level. Upon information and belief, ADT offered severance to Bray's Caucasian peer and other Caucasian employees affected by the RIF above the grade and level to which they were entitled.

74.     But for Bray's race, ADT would not have taken these actions against Bray or subjected Bray to this disparate treatment as compared to her Caucasian peers.

75.     ADT's discrimination against Bray violated 42 U.S. C. § 1981.

76.     ADT's discriminatory actions against Bray were taken with malice and/or a reckless disregard for Bray's rights.

77.     ADT's discriminatory actions because of Bray's race caused her damages.

78.     Bray seeks to recover all damages incurred because of this race discrimination against her including the equitable remedy of reinstatement, her back pay, front pay, and compensatory damages for the mental anguish and emotional distress caused by this race discrimination.

79.     Bray seeks to recover exemplary damages because of this race discrimination.

80.     Bray also seeks to recover her reasonable attorneys' fees and expenses and pre-judgment and post judgment interest.

## Age Discrimination under ADEA

81.     Bray incorporates the preceding paragraphs as if restated.

82.     ADT is an employer as defined by the ADEA, 29 U.S.C. § 630.

83.     Bray, age 52, is an employee covered by the ADEA. 29 U.S.C. § 630(f). ADT discriminated against Bray in the terms and conditions of her employment. ADT paid Bray less than her younger subordinates who reported to Bray.

84.     ADT, after eliminating Bray's position in February 2020, offered Bray the demotion to the position of Senior Instructional Designer at a salary lower than that being paid to the younger employees. ADT only matched the salaries it paid to the younger Senior Instructional Designers after Bray complained about the younger Caucasian employees being paid more than she would be paid.

85.     While Bray worked for ADT, ADT did not promote Bray into any open positions. Instead, it promoted younger employees with less experience than Bray into open positions through a "tap on the shoulder" promotion process.

86.     ADT did not post positions for which Bray would have been eligible to apply despite its policies that require open positions to be posted.

87.     ADT eliminated Bray position again in August 2021.[2]

---

[2] Bray's EEOC charge relating to her position elimination and termination is currently pending.

88.       ADT did not hire Bray for any of the positions for which she applied and for which she was qualified. Upon information and belief, the candidates hired for those positions are younger than Bray.

89.       After ADT eliminated Bray's position, ADT gave Bray less support in finding a new position than younger employees.

90.       After ADT eliminated Bray's position, upon information and belief, ADT offered Bray less severance than it offered to younger employees.

91.       ADT subjected Bray to disparate treatment because of her age.

92.       ADT discriminated against Bray and terminated Bray because of her age in violation of the ADEA. 29 U.S.C. § 623(a).

93.       ADT's discriminatory actions were taken with malice and/or a reckless disregard for Bray rights.

94.       ADT's discriminatory actions have damaged Bray.

95.       Bray seeks to recover the damages to which she is entitled for ADT's discrimination because of her age, including the recovery of her back pay, the equitable right of reinstatement or front pay, fringe benefits, liquidated damages, punitive damages, pre-judgment and post-judgment interest,  and her attorneys' fees and costs.

### Title VII and Texas Labor Code Chapter 21 Retaliation Claims

96.       Bray incorporates the preceding paragraphs as if restated.

97.     ADT is an "employer" as defined by 42 U.S.C. § 2000e(b) and Tex. Labor Code § 21.002(8).

98.     Bray is an employee as defined by 42 U.S.C. § 2000e(f) and Tex. Labor Code § 21.002(7).

99.     Bray was qualified to perform the job duties at ADT.

100.    During her employment, Bray engaged in activity protected by Title VII and Texas Labor Code Chapter 21.

101.    ADT received a complaint of race discrimination from Bray in 2018 when Andrews asked Bray about hiring subordinates who would report to Bray at a salary higher than Bray. Bray told Andrews she thought ADT was hiring the younger white female candidate to assume Bray's role.

102.    Bray complained directly to Hethr England of discrimination when England offered Bray the Senior Instructional Designer position at a salary of 94,093.55, which was less than Bray's younger Caucasian subordinates earned for the job, including the male subordinate.

103.    Bray engaged in protected activity by filing her Charge of Discrimination No. 450-2020-03645 with the EEOC on May 11, 2020.

104.    ADT knew that Bray engaged in protected activity and complained of race discrimination by May 11, 2020 when Bray's counsel emailed with a courtesy copy of

Bray's Charge of Discrimination to ADT by sending it to Hethr England, Jana Perry, Amelia Pulliam.

105.    ADT retaliated against Bray after she filed her first Charge of Discrimination.

106.    ADT paid Bray less than Caucasian employees at her E4 level. ADT did not pay Bray the merit increase and bonus to which she was entitled as an E4 employee after she filed her Charge of Discrimination.

107.    ADT refused to promote Bray into any open positions through the "tap on the shoulder" promotion technique it used with many other employees who had not engaged in protected conduct. ADT hired Caucasian and non-minority employees for those positions.  ADT hired males for some of those positions.

108.    ADT did not hire Bray for any of the positions for which Bray applied despite her qualifications for those positions.  Upon information and belief, ADT hired Caucasian and non-minority employees for some of those positions.  ADT also hired males for some of those positions.

109.    ADT did not pay Bray the full amount it should have paid her as an E4 employee and paid her as if she was an E3 employee even though it had not formally recategorized her as an E3 employee.

110.    ADT eliminated Bray's position in a restructuring in August 2021. ATD did not hire Bray for any of the open positions for which she applied despite her experience and qualifications.[3]

111.    ADT, through England, did not provide Bray with the same level of assistance in finding a new position within ADT after eliminating her position was announced. England fully knew Bray had filed an EEOC charge that specifically referenced discrimination by England because England received a copy by email on May 11, 2020.

112.    ADT retaliated against Bray by not offering her severance at the appropriate level for her position and grade while, upon information and belief, offering severance to other employees at a level higher than their position and grade.

113.    But for Bray's protected activity, ADT would not have taken these adverse employment actions against Bray.

114.    ADT's retaliation against Bray violated 42 U.S. C. § 1981.

115.    ADT's retaliatory actions against Bray were taken with malice and/or a reckless disregard for Bray's rights.

116.    ADT's retaliatory actions because of Bray's protected conduct caused her damages.

---

[3] Bray's Charge of Discrimination for her termination and the retaliation in the severance offered is still pending.

117.     Bray seeks to recover all damages incurred because of this retaliation against her including the equitable remedy of reinstatement, her back pay, front pay, and compensatory damages for the mental anguish and emotional distress caused by this retaliation.

118.     Bray seeks to recover exemplary damages because of this retaliation.

119.     Bray also seeks to recover her reasonable attorneys' fees and expenses and pre-judgment and post judgment interest.

### 42 U.S.C. § 1981 Retaliation Claims

120.     Bray incorporates the preceding paragraphs as if restated.

121.     42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. It also encompasses claims of retaliation.

122.     ADT received a complaint of race discrimination from Bray in 2018 when Andrews asked Bray about hiring subordinates who would report to Bray at a salary higher than Bray. Bray told Andrews she thought ADT was hiring the younger white female candidate to assume Bray's role and that she was upset by that.

123.     Bray complained directly to Hethr England of discrimination when England offered Bray the Senior Instructional Designer position at a salary of 94,093.55, which was less than Bray's younger Caucasian subordinates earned for the job.

124.     Bray engaged in protected activity by filing her Charge of Discrimination No. 450-2020-03645 with the EEOC on May 11, 2020.

125.     ADT knew that Bray engaged in protected activity and complained of race discrimination by May 11, 2020 when Bray's counsel emailed with a courtesy copy of Bray's Charge of Discrimination to ADT by sending it to Hethr England, Jana Perry, Amelia Pulliam.

126.     ADT retaliated against Bray after she filed her first Charge of Discrimination.

127.     ADT paid Bray less than Caucasian employees at her E4 level.

128.     ADT refused to promote Bray into any open positions through the "tap on the shoulder" promotion technique it used with many other employees who had not engaged in protected conduct. ADT hired Caucasian and non-minority employees for these positions.

129.     ADT did not hire Bray for the positions for which Bray applied despite her qualifications for those positions. ADT hired Caucasian and non-minority employees for these positions.

130.     ADT did not pay Bray the full amount it should have paid her as an E4 employee and paid her as if she was an E3 employee even though it had not formally recategorized her as an E3 employee.  Upon information and belief, ADT did not pay Caucasian or non-minority employees at less than their stated pay grade.

131.     ADT eliminated Bray's position in a restructuring in August 2021 and did not hire Bray for any of the open positions for which she applied despite her experience and qualifications.

132.     ADT, through England, did not provide Bray with the same level of assistance in finding a new position within ADT after eliminating her position. England fully knew Bray had filed an EEOC charge that specifically referenced discrimination by England because England received a copy by email on May 11, 2020.

133.     ADT retaliated against Bray by not offering her severance at the appropriate level for her position and grade while, upon information and belief, offering severance to other Caucasian or non-minority employees at a level higher than their position and grade.

134.     But for Bray's protected activity, ADT would not have taken these actions against Bray.

135.     ADT's retaliation against Bray violated 42 U.S. C. § 1981.

136.     ADT's retaliatory actions against Bray were taken with malice and/or a reckless disregard for Bray's rights.

137.     ADT's retaliatory actions because of Bray's protected conduct caused her damages.

138.     Bray seeks to recover all damages incurred because of this retaliation against her including the equitable remedy of reinstatement, her back pay, front pay,

and compensatory damages for the mental anguish and emotional distress caused by this retaliation.

139.     Bray seeks to recover exemplary damages because of this retaliation.

140.     Bray also seeks to recover her reasonable attorneys' fees and expenses and pre-judgment and post judgment interest.

**ADEA Retaliation Claims**

141.     Bray incorporates the preceding paragraphs as if restated.

142.     ADT is an "employer" as defined by 29 U.S.C. § 630.

143.     Bray is an employee as defined by 29 U.S.C. §630(f).

144.     Bray was qualified to perform the job duties at ADT.

145.     During her employment, Bray engaged in activity protected by the ADEA.

146.     ADT received a complaint of age discrimination from Bray in 2018 when Andrews asked Bray about hiring subordinates who would report to Bray at a salary higher than Bray. Bray told Andrews she thought ADT was hiring the younger white female candidate to assume Bray's role and that she was upset by that.

147.     Bray complained directly to Hethr England of discrimination when England offered Bray the Senior Instructional Designer position at a salary of 94,093.55, which was less than Bray's younger Caucasian subordinates earned for the job.

148.     Bray engaged in protected activity by filing her Charge of Discrimination No. 450-2020-03645 with the EEOC on May 11, 2020 and complaining of age discrimination.

149.     ADT knew that Bray engaged in protected activity and complained of race discrimination by May 11, 2020 when Bray's counsel emailed with a courtesy copy of Bray's Charge of Discrimination to ADT by sending it to Hethr England, Jana Perry, Amelia Pulliam.

150.     ADT retaliated against Bray after she filed her first Charge of Discrimination.

151.     ADT paid Bray less than younger employees at her E4 level.

152.     ADT refused to promote Bray into any open positions through the "tap on the shoulder" promotion technique it used with many other employees who had not engaged in protected conduct, but promoted younger employees into these positions.

153.     ADT did not hire Bray for any of the positions for which Bray applied despite her qualifications for those positions. Upon information and belief, ADT hired younger employees for these positions.

154.     ADT did not pay Bray the full amount it should have paid her as an E4 employee and paid her as if she was an E3 employee even though it had not formally recategorized her as an E3 employee.

155.     ADT eliminated Bray's position in a restructuring in August 2021 and did not hire Bray for any of the open positions for which she applied despite her experience and qualifications.

156.     ADT, through England, did not provide Bray with the same level of assistance in finding a new position within ADT as it did to Bray's younger peers after eliminating her position was announced. England fully knew Bray had filed an EEOC charge that specifically referenced discrimination by England because England received a copy by email on May 11, 2020.

157.     ADT retaliated against Bray by not offering her severance at the appropriate level for her position and grade while, upon information and belief, offering severance to other younger employees at a level higher than their position and grade.

158.     But for Bray's protected activity, ADT would not have taken these actions against Bray.

159.     ADT's retaliation against Bray violated the ADEA.

160.     ADT's retaliatory actions against Bray were taken with malice and/or a reckless disregard for Bray's rights.

161.     ADT's retaliatory actions because of Bray's protected conduct caused her damages.

162.     Bray seeks to recover all damages incurred because of this retaliation against her including the equitable remedy of reinstatement, her back pay, front pay,

and liquidated damages, compensatory damages for the mental anguish and emotional distress caused by this retaliation.

163.     Bray seeks to recover exemplary damages because of this retaliation.

164.     Bray also seeks to recover her reasonable attorneys' fees and expenses and pre-judgment and post judgment interest.

## Jury Trial

165.     Bray demands a trial by jury.

## Prayer

WHEREFORE, Plaintiff Cassandra Bray prays this Court enter a judgment for Bray and against ADT LLC on all claims asserted against it and award such other and further relief to which Plaintiff is just entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Fitzgerald Law, PLLC
8150 N. Central Expy., 10th Floor
Dallas TX 75206
214.265.9958 (direct dial)
(214) 367-6001 (fax)
karen@fitzgerald.law

Attorney for Plaintiff Cassandra Bray